```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF INDIANA
                        SOUTH BEND DIVISION

UNITED STATES OF AMERICA       CAUSE NUMBER 3:18cr00005

      vs.

REX HAMMOND,
                                      MARCH 25, 2019
      Defendant.


                      TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE ROBERT L. MILLER, JR.


APPEARANCES:


For the Government:       MS. MOLLY DONNELLY
                          Assistant United States Attorney
                          204 South Main Street
                          South Bend, Indiana 46601


For the Defendant:        MR. NICHOLAS OTIS
                          Newby, Lewis, Kaminski & Jones
                          Attorneys at Law
                          916 Lincolnway
                          LaPorte, Indiana 46350



                         DEBRA J. BONK
              FEDERAL CERTIFIED REALTIME REPORTER
                 UNITED STATES DISTRICT COURT
                204 SOUTH MAIN STREET - ROOM 314
                   SOUTH BEND, INDIANA 46601
                 DEBRA_BONK@INND.USCOURTS.GOV
                         574-246-8039



Proceedings reported in machine shorthand.  Transcript
produced by Computer-Aided Transcription - ECLIPSE
```

1    **THE COURT:** Good morning.

2    This is Criminal Cause 18cr00005, **United States**
3    **versus Rex Hammond**, and we are gathered as a result of
4    Mr. Hammond having filed a motion to suppress, and I set
5    today's hearing because I think there are some preliminary
6    matters we need to address before we can actually get into the
7    merits of the motion.

8    I think the first matter that we have to address is
9    whether the Court can consider the motion at all. The motions
10   deadline was September 7th of last year. We had a hearing on
11   a motion to suppress. It was called a motion in limine. That
12   was filed on September 7th. We heard it on October 9th,
13   and I denied the motion on October 24th.

14   This motion to dismiss was filed on January 31st of
15   this year. By my rough count, unaided by a computer, that's 92
16   days after the ruling on the first motions and 136 days after
17   the motions deadline, and Federal Rule of Criminal Procedure
18   12(c)(3) requires good cause to file a motion after the motions
19   deadline, so I think we first need to address what is good
20   cause.

21   And then, secondly, if the Court can consider the
22   motion, I think the next preliminary issue we have to address
23   is whether a **Franks** hearing is permissible. Assuming **Franks**
24   applies to sworn statements of this sort, generally no **Franks**
25   hearing can be held unless the Defendant makes a substantial

1  preliminary showing of -- and I'll quote -- a material falsity
2  or omission that would alter the probable cause determination
3  and a deliberate or reckless disregard for the truth, and
4  that's from **United States versus Glover**, 755 F.3d 811 at 820, a
5  decision by the Seventh Circuit Court of Appeals in 2014.
6         The Defendant's motion outlines factual statements
7  that were incorrect and raises arguments as to why they would
8  have affected the probable cause determination, but I think I
9  need to ask what facts there are that would allow an inference
10 that the statements were made with a deliberate or reckless
11 disregard for the truth.
12        If I find the motion can be filed and if I find that
13 the **Franks** hearing is permissible, then I guess we would get to
14 the **Franks** hearing.  And I know that when I simply said we were
15 setting a hearing on March 25th, that was a little less
16 specific than I've just been.
17        Mr. Otis, I think I need to turn to you, first, and
18 you can address the questions in any order you want.
19        **MR. OTIS:**  Sure.
20        **THE COURT:**  I think I have to rule on them in the
21 order I said.
22        **MR. OTIS:**  Sure.
23        Judge, we admit that the motion was filed after the
24 deadline.  We lay out the various issues here.
25        First, some of this information we obtained through

**1**   the first hearing.  Certainly the testimony we relied on to

**2**   support this second motion was based off of the testimony at

**3**   the first hearing, so that's the first argument.

**4**             Second, we needed the trial -- not the trial

**5**   transcript -- the transcript to do that, so we didn't have that

**6**   until a later date.  I can't speak to the date I obtained that.

**7**   I just don't recall as I sit here now.

**8**             Third, I believe that -- and I'll accept

**9**   responsibility.  I should have maybe asked for a new deadline

**10**  in light of the new trial date, but I believe that that

**11**  original deadline may have been set off of a earlier trial

**12**  date, but I could be wrong on that.

**13**            We didn't know, I would argue at least, I didn't

**14**  know, that we had these false statements until the admissions

**15**  at the last suppression hearing and so couldn't have acted on

**16**  them until we knew that.  It was news to me that they would

**17**  acknowledge the false statements.

**18**            So those are the arguments I would make for the basis

**19**  why it was filed after the deadline.

**20**            Moving on to the **Franks** issue.  I think **U.S. versus**

**21**  **Carpenter** cleared up that defendants have a constitutional

**22**  right of privacy regarding the CSLI information, and so I think

**23**  that's very clear at this point.  The Government, in this case,

**24**  obtained 56 days of CSLI information from Mr. Hammond's cell

**25**  phone, and the Supreme Court case talks about seven or more

1  days, that that's constitutionally protected.  They didn't

2  address a shorter period of time in that case.

3        So, then the lower courts have then had to address:

4  What do we do with situations where the Government followed the

5  statute at the time prior to **Carpenter**?  And we have the **Curtis**

6  case out of the Seventh Circuit that talks about, you know, the

7  good faith on the part of the Government.  Our argument here is

8  that good faith doesn't apply.  I think that what the Seventh

9  Circuit said is there are privacy protections for a defendant,

10 but good-faith exception can apply.  Our argument today is that

11 good faith does not apply.  In fact, there's a U.S. Supreme

12 Court case, **U.S. v Leon**, 468 U.S. 897, from 1984, the

13 good-faith exception does not apply to cases involving officer

14 misconduct, such as when an officer deliberately or recklessly

15 makes a false statement or omission.

16       So our argument here is that good faith would not

17 apply.  The constitutional protections of **Carpenter** apply and

18 that we should have a **Franks** hearing here today.

19       **THE COURT:**  That the good-faith exception does not

20 apply because there were **Franks** violations?

21       **MR. OTIS:**  Because they were false statements in the

22 2703 application, correct.

23       **THE COURT:**  Okay.  And I guess let me circle back --

24       **MR. DEFENDANT:**  Yeah.

25       **THE COURT:**  -- because **Franks** ordinarily -- and maybe

**1**   you're on a path different than I understand, but a **Franks**

**2**   motion usually requires not just falsity, not just material

**3**   falsity, not just outcome determinative material falsity, but

**4**   also deliberate or reckless disregard for the truth, and that's

**5**   what I'm trying to figure out.  How do we get to that?  And

**6**   maybe that's the flip side of your good-faith argument.  I

**7**   don't know.

**8**         **MR. OTIS:**  I don't know how I can get in the mind of

**9**   the officer, other than the officer admitted on the stand that

**10**  the statements in the 2703 application were false; that the

**11**  application stated that, by looking at the driver's license

**12**  photograph of Mr. Hammond and then the videos, that they

**13**  matched; and then he admitted on the stand that you couldn't

**14**  see the individual's face in these videos because it was

**15**  covered and admitted that those statements were not true.  So,

**16**  I can't get in the mind of the officer about whether it's

**17**  deliberate or not, but we have an admission under oath that the

**18**  statements in the application weren't true.

**19**         **THE COURT:**  Okay.

**20**         **MR. OTIS:**  Thank you.

**21**         **THE COURT:**  Thank you, sir.

**22**         Ms. Donnelly.

**23**         **MS. DONNELLY:**  Thank you, Your Honor.

**24**         As to the timing issue of the motion and good cause,

**25**  I understand that there are things that Special Agent Badowski

1  testified to that became a part of counsel's motion in that
2  respect.  However, the actual underlying information was all
3  available.  The 2703(d) application, the photographs, the
4  videos, all of the underlying information that counsel refers
5  to as being false statements or omitted statements was in the
6  possession of counsel prior to the filing deadline, prior to
7  the hearing.  So while the agent may have testified in ways
8  that Mr. Hammond believes help his argument, the actual
9  underlying information to make the motion was available to all
10 parties at the time.
11         In terms of the **Franks** hearing, whether there should
12 be a **Franks** hearing, I believe our motions get into why we
13 don't believe that **Franks** should extend to 2703(d) applications
14 and orders, to begin with, for all of the reasons that we
15 describe as to why they are different, being statutory versus
16 constitutional, derived, things that we're dealing with, the
17 application not being sworn or under oath, while an affidavit
18 obviously is, the reasonable grounds that are relevant and
19 material to an ongoing investigation versus probable cause.
20 They're two completely different things that we are talking
21 about, so we don't believe that there's any justification in
22 case law or that's been brought before this Court for why
23 **Franks** should be extended to 2703(d) applications.
24         That being said, we also don't believe that there has
25 been a showing, even any showing, let alone a substantial

 1   preliminary one, that any information contained within the
 2   application was deliberately false or reckless -- recklessly
 3   included.
 4              While Special Agent Badowski -- much of Mr. Hammond's
 5   motion is based on statements that were made during
 6   Cross-Examination.  However, on Redirect, Special Agent
 7   Badowski clarified.  And in our -- I won't get into all the
 8   details.  They are described at length in our response.  But
 9   the information contained in the application was not, in fact,
10   false.  It was summaries of what the investigation showed.
11   This was an investigation that had about a dozen different law
12   enforcement agencies involved, from two separate states,
13   federal and state entities.  And boiling their investigation
14   down into a manageable application is what happened here, and
15   the correct information was conveyed to the Magistrate Judge
16   who made the determination here.
17              Now, in terms of how, at this stage, counsel could
18   show any type of deliberate falsehood or reckless disregard for
19   the truth, other cases indicate that, in overcoming that burden
20   by the defense, they can look at other circumstances or
21   ancillary information that might provide to the Court some
22   indication that the material either included or omitted was
23   deliberately false or showed a reckless disregard for the
24   truth.
25              So there is information other than just someone

1   saying, "I suppose that wasn't exactly correct."  There is

2   other information in other cases that can show what that

3   substantial preliminary showing could be, and there isn't

4   anything here that's been brought to the Court to show that

5   that existed in this case, that anything incorrectly stated in

6   the application was deliberately false or in reckless disregard

7   for the truth.

8           **THE COURT:**  Okay.  Thank you, Ms. Donnelly.

9           Mr. Otis, the right to close on these issues.

10          **MR. OTIS:**  Again, going back to the statements, I

11  mean, under oath, we have admissions that -- Paragraphs 12 and

12  16 from Agent Badowski.

13          "So the statement in that request is not accurate,

14  correct?"

15          "Not to the full extent, no."

16          And we asked him again, "Driver's license photograph

17  of a Hammond appears to match the subject captured by the

18  security camera system during the armed robbery in Decatur,

19  Indiana.  You could not see the individual's face in the armed

20  robbery, correct?

21          "Correct.

22          "So the statement is not correct either?

23          "Correct."

24          We have admissions, you know, that they weren't true,

25  and I don't know whether that is deliberately not true,

1  negligently not true, but they are not true, and I can't get
2  into the mind of the agent as to why that statement was
3  included in the application, but I think we've made a
4  substantial showing to warrant a **Franks** hearing at this point.
5         **THE COURT:**  Thank you, sir.
6         **Franks** sets a high burden, and I think it does so
7  intentionally so that we don't have a challenge to every
8  affidavit in support of a search warrant, which is where the
9  **Franks** line of cases began, and, accordingly, a high burden is
10 required, and I don't think the high burden has been met here.
11        I agree with the Government -- well, I agree with
12 both sides that there are statements that Agent Badowski
13 testified to candidly from the witness stand during the
14 suppression hearing, that the statement didn't line up, that it
15 was false, but it seems to me that those statements were false
16 because they were incomplete.
17        The photograph, I think, is the strongest issue that
18 the defense raises, that the photo was part -- and I think
19 Agent Badowski testified to this on either Direct or
20 Redirect -- part of the comparison of what the picture was, as
21 well as the description on the driver's license, with what was
22 visible on the security camera, and the whole thing became an
23 identification.  Certainly, what was submitted in the
24 application didn't contain that whole explanation, but the
25 photograph, it was true in the sense that the photograph was

1  consistent with what they saw on the the security film,
2  security video.  I'm dating myself by talking about a security
3  film.
4           More importantly, from the standpoint of trying to
5  determine whether there has been a substantial preliminary
6  showing of a deliberate or reckless disregard for the truth, I
7  don't see how an advantage -- how Agent Badowski would have
8  conceived of an advantage being gained by explaining only part
9  of the role that the photo played in the identification.
10 Frankly, it said the omission of the rest of what played the
11 part in it seems to weaken the application to that extent.
12          Similarly, the chain of possession, putting a person
13 in or taking a person out, I don't see how an illicit advantage
14 would have been gained by doing that.  And as the Government
15 pointed out, we really have two different versions of whether
16 -- and I'm blanking on the person's name, but whether that
17 person was one of the owners or possessor -- Tommy Maxwell, I
18 think -- was an owner or possessor of the firearm, so I simply
19 don't -- because I can't perceive what the advantage was that
20 would be gained by those, I guess, more omissions than factual
21 -- statements of facts that were not true, I don't think an
22 inference could be drawn from what's been put in front of me,
23 understanding this is all prehearing, but it's also an
24 important precondition to a hearing, that would allow an
25 inference of a deliberate or a reckless disregard for the truth

```
 1   when Agent Badowski was putting together the application.
 2           I don't want to -- I don't want to base this on the
 3   timing simply because of the unusual combination of events.  It
 4   seems to me that the motion could have been filed more quickly
 5   after the October 9th hearing.  Looking at the docket sheet,
 6   it appears the transcript was ready in mid-December, throwing
 7   in holidays.  I don't want to state for the record that good
 8   cause could not be found for that.
 9           And I would not hold on the record that **Franks**
10   doesn't apply to a 2703(d) application.  I think the Government
11   has a credible argument.  But if it were not -- if a **Franks**
12   hearing were otherwise permissible on this record, I would
13   conduct the **Franks** hearing and let the Court of Appeals decide
14   whether I should have not, rather than not conduct it and have
15   the Court of Appeals tell me I should have.
16           So my ruling today is based exclusively on the lack
17   of a substantial preliminary showing that Agent Badowski, as
18   the drafter of the application, showed a deliberate or a
19   reckless disregard for the truth of the matters contained in
20   the application.
21           Did I cover that adequately, Mr. Otis, for you to
22   have for appeal?  I'm not asking you to agree with the ruling,
23   obviously, but is there anything else you need a ruling on to
24   preserve that?
25           **MR. OTIS:**  No, Your Honor.
```

**1**          I would ask, I guess, procedurally or practically,
**2**  when we get to the trial, how the Court would like me to
**3**  preserve that issue, if I need to do it again before the start
**4**  of trial?
**5**          **THE COURT:**  Unless there's something new to argue,
**6**  I'll just view this as applying to trial.  If you have got
**7**  something new to argue, raise that when the jury's not present.
**8**          **MR. OTIS:**  I just want to make sure I preserve it for
**9**  trial, because I know, in some courts, if you don't reraise it
**10** and allow it to come in, you've waived it, so I just want to
**11** make sure that's preserved.
**12**         **THE COURT:**  I don't want to see that happen either.
**13**         **MR. OTIS:**  Thank you.
**14**         **THE COURT:**  Ms. Donnelly, anything I would need to
**15** add since I'm ruling orally instead of in writing?  Anything
**16** that the Government would need as part of the ruling?
**17**         **MS. DONNELLY:**  No, Your Honor.  I believe the ruling
**18** is sufficient.
**19**         **THE COURT:**  Okay.  I will see you the week of the 4th
**20** of April.
**21**         **MS. DONNELLY:**  The 8th of April, Your Honor.
**22**         **THE COURT:**  The 8th of April.
**23**         **MS. DONNELLY:**  The one last thing I would put on the
**24** record.  I do anticipate that we will be filing something to
**25** this effect.  But just so it's made a part of the record for

1   future purposes, there were plea offers extended in this case
2   that were rejected by the Defense.
3             **THE COURT:**  Okay.  I would be asking at the beginning
4   of the trial.
5             Mr. Otis, do you agree with that, that the Government
6   had two plea offers?
7             **MR. OTIS:**  Yes.
8             **THE COURT:**  And you conveyed those, I assume, to
9   Mr. Hammond?
10            **MR. OTIS:**  Yes.
11            **THE COURT:**  Mr. Hammond, let me just ask you,
12  briefly.  Has Mr. Otis presented to you -- and I don't want to
13  know what they were -- two plea offers from the Government?
14            **THE DEFENDANT:**  Yes, he has.
15            **THE COURT:**  Okay.  With that, I will see you all in a
16  few weeks.
17            **LAW CLERK:**  All rise.
18            **(All comply; proceedings concluded.)**

```
 1                         CERTIFICATE

 2       I, DEBRA J. BONK, certify that the foregoing is a

 3  correct transcript of the record of proceedings in the

 4  above-entitled matter.

 5       DATED THIS 15th DAY OF AUGUST, 2019.

 6                         S/S DEBRA J. BONK

 7                         DEBRA J. BONK
                           FEDERAL CERTIFIED REALTIME REPORTER
```